EASTERN SEABOARD PILE DRIVING CORPORATION, A CORPORATION OF THE STATE OF DELAWARE AUTHORIZED TO DO BUSINESS IN NEW JERSEY, PLAINTIFF, v. NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided March 6, 1979.

*Mr. Steven L. Strelitz* for plaintiff (*Messrs. Nolan, Lynes, Bell & Moore,* attorneys).

*Mr. Stephen D. Cuyler* for defendant (*Messrs. Stryker, Tams & Dill,* attorneys).

GERONIMO, J. S. C. Motion for summary judgment brought by defendant New Jersey Property-Liability Insurance Guaranty Association (Association), involving the interpretation of § 5 of the New Jersey Property-Liability Insurance Guaranty Association Act (Guaranty Act), *N. J. S. A.* 17:30A–5, which provides in pertinent part:

"Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State * * *.

Plaintiff is the owner and operator of a steel dredge named the "Beverly M" which sustained certain damage on or about March 17, 1973 within the coverage of a marine insurance policy jointly issued by 11 insurance companies. Interstate Insurance Company, one of the insurers, had underwritten 10% of the risk covered by the policy. Subsequent to January 1, 1974 a court of competent jurisdiction declared Interstate to be insolvent, thus bringing plaintiff's claim within the ambit of the Guaranty Act.

On or about June 11, 1976 all of said insurance companies, with the exception of Interstate, approved a settlement for all claims for damage to the "Beverly M" on a compromised basis for the sum of $379,000. The other ten insurance companies have paid plaintiff their proportionate shares of the settlement amount, or $341,100.

Plaintiff submitted a claim to defendant Association for Interstate's proportionate share of the settlement, *i. e.*, $37,900. On or about September 13, 1976 the Association rejected the claim, whereupon plaintiff instituted suit seeking a judgment declaring that its claim is a "covered claim" within the definition set forth in the Guaranty Act.

In a prior motion for summary judgment decided on January 5, 1979, 165 *N. J. Super.* 358 (Law Div. 1979), Judge Young held that plaintiff was not a resident of New Jersey and therefore not a covered claim on that basis. Accordingly, the issue presented by this motion is whether the "Beverly M" is permanently located in New Jersey so as to constitute a covered claim, alternatively.

The issue requires an extensive detailing of the facts.

Plaintiff is a Delaware corporation with its executive offices located in New Jersey and its only operational facility at the Todd Shipyards in Hoboken, New Jersey.

The "Beverly M" was purchased from the United States Maritime Commission in March 1972 and then brought to Hoboken for refitting which took 11 months to complete.

Between March 12 and December 6, 1973 the "Beverly M" was engaged in an operation off the southern coast of Long Island known as the Nassau County Outfall Project. During this period the "Beverly M" returned to Hoboken for repairs on six occasions. Out of this approximately 270-day period, the "Beverly M" was at the job site for about 170 days and in Hoboken for about 100 days.

Thereafter, the "Beverly M" remained in New Jersey until the summer of 1976, a 2½-year period. Most of this period was spent in Hoboken, either for the purpose of effecting certain repairs on the dredge or to assist in the refurbishing of

the engine room on a tugboat owned by plaintiff. The "Beverly M" also performed a short job in the Sandy Hook area during this period.

The "Beverly M" resumed work at the Outfall Project in the summer of 1976, where it remained continuously until Christmas 1976, at which time it returned to Hoboken. After the holidays it went back to the Outfall Project, which was completed in January 1977.

The dredge was idle until November 1977, during which time it was docked in Hoboken. Between November 1977 and July 1978 it was engaged on a project in Delray Beach, Florida, and did not berth at any port during the job. From July 1978 until the present it has been berthed in Hoboken and will remain there pending further dredging work.

The insurance policy covering plaintiff's damage claim was issued in the State of New York, covering the "Beverly M" only while it was at the job site on the Outfall Project in New York Harbor and in transit between New York Harbor and the job site.

The United States Coast Guard's Certificate of Inspection and Consolidated Enrollment and License list the "Beverly M's" home port as New York, New York.

The above facts were gleaned from the deposition of Mr. Mutch and from exhibits attached to the moving papers. Both parties rely on these facts in support of their respective positions. There being no genuine issue as to any material fact, this matter is ripe for summary judgment pursuant to *R.* 4:46.

The sole issue before the court is the construction of the words "permanently located" in *N. J. S. A.* 17:30A-5. Neither the court nor the parties have been able to locate any cases on point either in New Jersey or in any other jurisdiction in which the Uniform Act has been adopted. Accordingly, the court's first task is to define the words "permanently located" so that there will be a legal standard to apply to the facts.

The same words are also contained in *N. J. S. A.* 17:30A–12, which states in pertinent part:

Any person having a covered claim which may be recovered from more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured at the time of the insured event except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property. * * *

Identical language contained in more than one section of a given statute must be construed consistently in each section of that statute. *Oldfield v. N. J. Realty Co.,* 1 *N. J.* 63, 69 (1948). Reading these two sections together leads to two conclusions. First, the Guaranty Act contemplates that not all property will have a permanent location. Second, where property does have a permanent location, it can have only one permanent location. These two conclusions are necessary corollaries of the priority system established by § 12.

It is necessary to bear in mind two fundamental tenets of statutory construction. The first is that in the absence of special meaning, words used in a statute must be given their ordinary and well understood meaning. *Service Armament Co. v. Hyland,* 70 *N. J.* 550, 556 (1976). The second is that statutory language should be interpreted in a reasonable manner consistent with the intent and purpose of the statute as a whole rather than in a strict or literal sense. *Caputo v. Best Foods,* 17 *N. J.* 259, 264–65 (1955).

Property need not be fixed or immovable in order to have a permanent location; however, the property must have more than a temporary or transitory presence in the state. Therefore, the court holds that property is "permanently located" in the State of New Jersey within the meaning of the Guaranty Act when said property has significant and continuing contacts with this state and has no significant and continuing contacts with any other state. The court is mindful of the fact that property may have significant and con-

tinuing contacts with more than one state. In such a situation, the property will be deemed to have no permanent location since property can have only one permanent location under the Guaranty Act.

This standard is consistent with the language and purposes of the Guaranty Act since § 12 of the act channels claimants to the state where their damaged property is permanently located (if indeed it has a permanent location). Had a stricter standard been adopted by the court, so little property would have a permanent location that a major segment of § 12 would virtually be rendered a nullity.

The court's approach is bolstered by the reading of §§ 2 and 4 of the Guaranty Act, *N. J. S. A.* 17:30A-2 and 17:30A-4. These provide that the act is to be liberally construed in order to effect its stated purpose of paying claims against insolvent insurance companies in a quick and efficient manner. See also, *N. J. Prop. Liab. Ins. Guar. Ass'n v. Sheeran,* 137 *N. J. Super.* 345, 351 (App. Div. 1975), wherein it was held that the Guaranty Act must be interpreted to protect policyholders and claimants and to advance their interests rather than the interests of the association.

Defendant argues that the "Beverly M" either had no permanent location or was permanently located in New York. The court disagrees.

The only connection that the "Beverly M" had with New York was that it was used by plaintiff in the course of performing a contract. There was no continuing contact with New York; this was only one temporary job. Moreover, out of the seven years which plaintiff has owned the "Beverly M", less than one year was spent within the State of New York. The court also considers it insignificant that the insurance policy covering his claim was issued in New York, since the issue herein is the physical location of the "Beverly M".

The designation of New York as the home port of the "Beverly M" in Coast Guard documents is immaterial. Under the relevant federal statutes a vessel's home port is that port city at which marine documents are issued. 46

*U. S. C. A.* § 18. The nearest Coast Guard office is located in New York City, and Hoboken is included within the New York district. Thus, this designation does not indicate where a vessel is actually located.

Similarly, the navigation limits included in the insurance policy do not lead to the conclusion that the "Beverly M" was "pemanently located" in New York. This policy covered only the Outfall Project which, as we have seen, constituted a small segment of the history of the "Beverly M". In addition, the words "New York Harbor" contained therein unquestionably include the dredge's home base in Hoboken.

The facts presented to the court demonstrate that Hoboken is the home base of the "Beverly M" and plaintiff's only operational facility; the dredge is berthed in Hoboken whenever not out on a job site; all repairs and refittings of the dredge were performed in Hoboken; it was used by plaintiff in its Hoboken shipyard for the purpose of making repairs on another of plaintiff's vessels; it was never berthed at any port other than Hoboken; when on a job it remains at the job site in the open seas, and finally, the "Beverly M" has been physically present in New Jersey for about five years and two months of the seven years of plaintiff's ownership.

The court considers the contacts with New Jersey to be significant and continuing, while the "Beverly M" has never had more than transitory or temporary contacts with any other state.

Defendant further argues that § 12 of the Guaranty Act seeks to channel claimants into that guaranty association which has received the benefit of surcharges levied on premiums on the insurance policy giving rise to the claim.

The court's reading of § 12 finds no evidence of such an intention. If the Legislature had desired to establish a priority system based upon the state where the premium surcharge was paid, it would have done so explicitly. In fact, payment of the premium surcharge does not constitute a

precondition to recovery under the Guaranty Act. See *N. J. S. A.* 17:30A–5 and 17:30A–8.

Finally, defendant contends that the court's standard is too liberal in that virtually every item of property would have a permanent location in New Jersey.

The court, however, is of the opinion that its standard adopts a reasonable middle ground between too strict and too liberal a construction. Movable property which merely has some nexus with New Jersey will not be "permanently located" here.

In summary, therefore, the court holds that the "Beverly M" had significant and continuing contacts with New Jersey and had no significant and continuing contacts with any other state. Accordingly the court finds the "Beverly M" was "permanently located" within the State of New Jersey within the meaning of *N. J. S. A.* 17:30A–5 and 17:30A–12.

Defendant's motion for summary judgment is hereby denied.